FRANK C. VIERLING *et al.*

*v.*

MECHANICS' AND TRADERS' SAVINGS, ETC. ASS'N, *et al.*

*Opinion filed April 17, 1899—Rehearing denied June 7, 1899.*

1. LOAN ASSOCIATIONS—*by-laws imposing fines must be reasonable.* Where a loan association is empowered by its charter to impose fines on members for failure to pay installments of interest and principal when due, but the charter is silent as to the extent of such power, the validity of by-laws passed in pursuance of such power is tested by their reasonableness.

2. SAME—*when fines imposed on borrowing members are unreasonable.* Fines of twenty-five cents per share for failure to pay interest installments when due, and of ten cents per share for delinquent installments of principal, are oppressive, and cannot be allowed against a member on foreclosure.

3. SAME—*defaulting member not credited with earnings on foreclosure.* On foreclosure by a loan association against a member in default for failure to comply with the by-laws and his contract as to payment of installments, the defendant may be credited with amount paid in on his stock, with interest, but is not entitled to share in the earnings of the association with members who are not in default.

4. SAME—*effect of resolution maturing stock of series.* A resolution directing the payment of $100 for each share of stock of a certain series "on which $53 installments have been paid," and ordering the

release of all loans secured for such series "upon payment of all dues and interest and fines up to the present month," does not mature stock of that series held by one who has paid in less than $53 per share, and who is in default for interest, principal and fines.

*Mechanics', etc. Savings Ass'n* v. *Vierling,* 66 Ill. App. 621, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a bill to foreclose two trust deeds given by Frank C. Vierling and Margaret Vierling, his wife, to the Mechanics' and Traders' Savings, Loan and Building Association of Chicago. The association was one commonly known as a "serial association,"—that is, it issued stock every three months in a new series, each series being distinguished by its number. A full description of associations of this character will be found in Endlich on Building Associations, sec. 47. In May, 1885, Frank C. Vierling became the owner of twenty shares of stock in the twenty-ninth series, and in November of the same year he became the owner of twenty other shares in the twenty-ninth series. He made a loan of $2000 on each of these blocks of stock, and gave his notes and trust deeds and assigned said shares of stock to the association as collateral security. These notes and trust deeds provided that interest should be paid on each loan of $2000 at the rate of eight per cent per annum, in equal monthly installments of $13.33, and the principal of the loan should be paid at the rate of $10 each month, which payment of $10 should be applied on the forty shares of stock, and when each of said shares reached the par value of $100, through the amount paid in and the earnings of the association, the loans would be paid by applying said stock to the payment of the principal of said loans and canceling the stock. The by-laws of the association provide for a fine of ten cents per share for default in payment

of installments of principal, and twenty-five cents per
share for default in payment of installments of interest.

In August, 1891, the association figured that the stock
in the twenty-ninth series upon which $53 per share had
been paid was at par,—that is, the earnings of the stock,
added to the $53 paid in, made the stock worth $100 per
share,—and the board of directors of the association, by
resolution, declared all stock matured in the twenty-ninth
series upon which $53 per share had been paid in. Vier-·
ling at this time had been in default in his payments for
months, and had only paid $1067.50 on his forty shares
of stock, or $26.69 per share. He made occasional pay-
ments after this until November, 1894, when the board of
directors declared his stock forfeited and ordered these
foreclosure proceedings to be instituted. The associa-
tion, in its accounting, charged Vierling with the par
value of the shares, the full amount of the loan, ($4000,)
and interest and fines to November, 1894, and gave him
credit for installments of principal and interest paid, and
interest at the rate of six per cent on all installments of
principal paid by him,—in other words, it allowed him
the same amount it would a withdrawing stockholder.
According to this method of accounting there was due in
November, 1894, on both loans, $5462.73. Vierling claimed
the fines were excessive and should not be allowed, and
that he should not be charged with $100 per share, or
$4000, but only $53 per share, or $2120,—in other words,
that the resolution of August, 1891, maturing stock, ap-
plied to himself as well as to stockholders not in default,
and that he was entitled to be credited with the earnings
of the association. His position was sustained by the
court, with the exception of the fine of ten cents a share
for default in payment of installments on principal, which
was allowed the association. The association appealed
to the Appellate Court, where the decree was reversed
and the defendants sued out this writ of error. The as-
sociation has assigned cross-errors. .

Pope & Small, for plaintiffs in error.

Bowen W. Schumacher, (Pam, Donnelly & Glennon, of counsel,) for defendants in error.

Mr. Justice Craig delivered the opinion of the court:

The association was organized under the act of 1872. (Laws of 1871, p. 173.) Sections 1 and 2 of the by-laws of the association are as follows:

"Sec. 1. Every member who shall neglect to pay his or her installments at the time they may become due shall pay to the association a fine of ten cents per share for each installment past due.

"Sec. 2. Every borrowing member who shall neglect to pay the interest on his loan when the same may become due shall pay to the association a fine of twenty-five cents for each share of stock on which he may have obtained a loan."

The plaintiff in error Vierling, in his applications for loans, agreed to be governed by the by-laws. In the notes signed by him he expressly states that the obligation was given to secure the payment of all fines to be assessed according to the by-laws of the association. The trust deeds contain a similar provision. Fines were assessed against his account on the books of the association, and the first question to be considered is whether the association is entitled to recover the fines assessed, in this proceeding. Under its charter the association was clothed with power to pass by-laws in regard to fines which might be imposed upon its members for a failure to pay interest upon the money loaned, and also for a failure to pay installments of principal as the same became due by the terms of the contract. But where a power of this character is conferred and the mode of its exercise is not prescribed by the act, a by-law passed in pursuance of the law must be reasonable, and not grossly oppressive. (*City of Chicago* v. *Rumpff*, 45 Ill. 90; *City of Lake View* v. *Tate*, 130

id. 247.) In Beach on Private Corporations, (vol. 1, sec. 32,) in the discussion of this subject the author lays down the rule as follows: "Even under express legislative authority to impose fines there are limits beyond which the corporation, by its laws, cannot go. The amount of the fines must be reasonable." Again, Endlich, in section 418, (2d ed.) says: "Under the statute and charter the regulation of the fines is ordinarily left to and becomes the proper province of the by-laws. But even without any distinct statutory qualifications the power is subject to well settled restrictions. These are principally (1) that the fines to be charged must be certain and notoriously established by by-law; (2) that they must be reasonable, and not grossly oppressive." And in section 425 the same author says: "The proper measure of fines is the real damage the building association sustains from the failure of a member to pay his dues, which damage is really equal to interest upon the amount, together with the proportion coming to it from the then obtainable premiums upon the sale of money. The fine should be slightly in excess of this, so as to make it more profitable to the member to pay promptly than to lag behind. A fine of from one to two per cent per month would nearly in all cases be sufficient and just."

Under the rule indicated it is apparent that the fines imposed here were unreasonable and excessive. The interest required to be paid on each loan of $2000 amounted to the sum of $13.33 each month. Now, if plantiff in error Vierling failed to pay the interest for any one month, the association would, of course, lose the interest which would have come from that sum in case it had been paid, which, at eight per cent, would amount to $1.06 per annum or nine cents each month, whereas the fine imposed for a failure to pay the $13.33 monthly was twenty-five cents per share. The installments required to be paid on the stock payments were $10 a month. Interest on that amount at eight per cent would be eighty cents a year or six and

two-thirds cents a month, whereas the fine imposed for non-payment of the installment was ten cents per share. The fines imposed were much greater than the loss or damage sustained by the association on account of the failure of Vierling to pay as required by the by-laws. It may, however, be said, if the installments and the interest had been paid monthly they might have been loaned at a premium. There is no evidence in the record that the money was worth a premium. There is therefore nothing upon which the position assumed can be predicated. But if a loan could have been made of the same premium paid by Vierling when he made the loan in question, the premium, added to the lawful interest, would not equal the fines imposed by the by-laws. As the by-laws imposing the fines were therefore unreasonable and oppressive, they were invalid, and the association was not entitled to recover of Vierling the fines with which he was charged.

The next question presented by the record is, what amount was the association entitled to recover from Frank C. Vierling on the foreclosure of the two deeds of trust? As has been seen, Vierling made two loans of the building association, of $2000 each, and for the purpose of securing the loans he gave his notes and trust deeds for the sum of $4000, the notes bearing interest at eight per cent. In addition he assigned to the association two certificates of stock, of twenty shares each, in the twenty-ninth series. Section 8 of the act under which the association was organized provides: "In case of non-payment of installments or interest by borrowing stockholders for the space of six months, payment of principal and interest, without deducting the premium paid or interest thereon, may be enforced by proceeding against their securities, according to law." (Laws of 1872, p. 175.) On the 16th day of November, 1894, Vierling being in default in his payments of interest, installments and fines, the association passed a resolution reciting that Vierling has made default in the payment of installments due and payable

179—34

under the trust deeds and notes, and by-laws under which the loans were made; that the same have remained due for the space of six months and upwards. It was therefore resolved that the loans "be and the same are hereby declared due," and the attorney of the association was directed to institute proceedings to collect the same. In accordance with the resolution this bill of foreclosure was filed.

At the time the resolution was passed ordering foreclosure proceedings, Vierling had paid on his forty shares of stock only the sum of $1067.50, or $26.69 per share. The association in the circuit court claimed that it was entitled to the face of the loan, or $4000, and gave Vierling credit on the loan for the above amount of $1067.50 which he had paid, and interest thereon, amounting to $629.84. In other words, the association applied the payments Vierling had made on his stock which was held as collateral to the loan, in reduction of the amount due on the loan. The circuit court, however, did not approve the mode of stating the account adopted by the association, but held that Vierling could only be charged on his loan with $2120, or the value of his forty shares of stock · if matured, matured stock being figured on a basis of $53 per share; that the association was only entitled to collect from Vierling the difference between what he had paid on his stock and what he would have to pay to have matured the same,—in other words, the difference between $26.69 per share and $53 per share for forty shares, which amounted to $1052.40. We think the rule adopted by the circuit court in stating the account was erroneous. It must be remembered that Vierling was a defaulter. He had failed for a number of years to pay the interest on his loan and installments of principal, as he was required to do by the terms of his contract, and being a defaulter he was not entitled to be credited with the earnings of the association or of the stock. He did not stand upon the same basis as members of the association

who had complied with their contracts and who had fully complied with the by-laws of the association.

In the discussion of the rights of a defaulting member, Endlich on Building Associations (2d ed. sec. 132,) says: "With the profits they had been making he has nothing to do, because for that the society is accountable only upon its dissolution, and then only to those who have persevered in its membership. Similarly he gets credit for the interest he paid, but not for the gains the association may have made by throwing it into the general fund and re-investing it." Again, in section 149 he says: "Whatever, therefore, may be the advantage allowed to members voluntarily re-paying their loans, these provisions have no application and offer no immunities to those who become defaulters and are upon that ground sued by the association upon the covenants of their obligations. Having thus violated the rules of the society they are not entitled to the benefits held out to those who keep them, nor are they, within the meaning of the statute, designed to favor conscientious borrowers. All that they can claim, as against the building association, is the right (which we have already seen is inherent in every member at all times) to appropriate, in part payment of their obligations, the actual payments they have already made by way of subscriptions and by way of interest upon their loans."

In *Watkins* v. *Workingmen's Building Ass.* 97 Pa. St. 514, it was held: "Where, in an action by a building association against a member for an amount borrowed by him from the association, for which amount the association holds the defendant's shares therein as collateral security, the defendant having defaulted in the payment both of premium and interest on his loan, seeks the value of his stock, on account of his indebtedness he will be entitled to credit only for the amount paid in by him on account of the said stock, and not to the value of the stock at the time of the trial."

Under the rule indicated in the authorities cited, as Vierling was a defaulter and had failed to comply with the by-laws of the association, and had failed to comply with his contract in the payment of interest and installments of principal, he could not share in the earnings of the association as did those members who had paid all obligations as provided by the by-laws and the contract they had entered into with the association.

Reliance is, however, placed in the argument on article 18 of the by-laws and a resolution of the association passed on August 17, 1891. Article 18 is as follows: "When, in any series, the total of installments paid in, and the earnings accredited to the shares of stock in that series, amount to the par value of all the shares in that series outstanding, the legal holders of such shares shall be entitled to $100 for each share of stock held by them, and no profits or interest shall be allowed to such shares thereafter, and all borrowers on stock of that series shall receive their bonds canceled and their securities shall be released." The resolution of August 17, 1891, is as follows: "On motion, the officers were directed to pay $100 for each share in the twenty-ninth series on which $53 installments have been paid, and the trustee is hereby authorized to release all loans secured for the twenty-ninth series upon payment of all dues and interest and fines up to the present month."

We do not think the by-law or the resolution in any manner aids a defaulting stockholder of the association. We do not understand that article 18 was intended to confer upon all the stockholders who held stock in any one series the right to receive $100 on each share of stock regardless of the amount which had been paid by each stockholder on his stock, but where any one stockholder had paid an amount which, added to the earnings, would equal the par value of stock so held by him in that series he would then be entitled to $100 on his share of stock. As to the resolution of August 17, 1891, Vierling did not

fall within its terms or within its spirit. When the resolution was adopted the association had ascertained that the earnings which each stockholder in the twenty-ninth series who had paid $53 in installments was entitled to receive would amount to the par value of his stock, and to such shareholders a payment of $100 was ordered on each share of stock. Vierling, however, had not paid $53 on each share of his stock. He had only paid $26.69. He therefore had no right to claim the benefits which stockholders who had promptly paid their installments of interest and principal were entitled to receive. The resolution did not mature all stock in the twenty-ninth series, but only the stock upon which $53 in installments had been paid when the stockholder was not in default. Vierling is now claiming the earnings of the association when he has refused to bear the burdens imposed upon other stockholders. The earnings of the association which increased the value of the stock from $53 per share to $100 came from those stockholders who had paid their installments of principal and interest promptly as they became due, and it would be manifestly unjust to take those earnings and credit them to Vierling, who had refused to pay his installments.

This is not a controversy solely between appellants and the association, but the rights of stockholders who have complied with the by-laws and their contract with the association are also involved, and we are unable to see any ground upon which Vierling's stock can be held to be matured stock without establishing a precedent which will be manifestly unjust to the association and its stockholders who have complied with their contract.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court, with directions to enter a decree in conformity to this opinion.

*Reversed and remanded.*