Clara D. Payson et al. v. The Iroquois Building and Loan Association.

1. APPELLATE COURT PRACTICE—*The Question of Usury Can Not be Raised for the First Time in the Appellate Court.*—Where usury is not set up as a defense in the trial court, the question can not be raised in the Appellate Court.

2. BUILDING AND LOAN ASSOCIATIONS—*Credits to Which Defaulting Members Are Entitled.*—Where, in an action by a building and loan association against a member for an amount borrowed by him from the

association, for which amount the association holds his shares as collateral security, and such member, having defaulted in the payment of both premium and interest on his loan, seeks the value of his stock on account of his indebtedness, he will be entitled to credit only for the amount paid in by him on account of his stock and not to the value of such stock at the time of the trial.

3. SAME—*When a Member Can Not Share in the Earnings of the Association.*—A member of a building and loan association who is a defaulter and who fails to comply with the by-laws of the association or his contract, in the payment of interest and installments of principal, can not share in the earnings of the association with the members who do comply with the obligations of their contracts with the association.

**Foreclosure.**—Appeal from the Circuit Court of Iroquois County: the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed February 13, 1901.

C. H. PAYSON and NELLIE B. KESSLER, attorneys for appellants.

DOYLE & CRANGLE, attorneys for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a bill by appellee to foreclose a trust deed given by appellants, Clara D. Payson and C. H. Payson, to secure the payment of the sum of $500 to the Iroquois Building and Loan Association, to which bill appellants and Oscar Martin, who is alleged to claim some interest in the premises in question, were made defendants.

It is charged in the bill that on July 13, 1894, appellant Clara D. Payson became a member of the Iroquois Building and Loan Association of Watseka, Illinois, subscribing for five shares of the capital stock; that afterward, on August 6, 1894, she and her husband, C. H. Payson, executed and delivered to said association their bond in the sum of $500 for money loaned her by the association; that for her loan she bid a premium of twenty-five per cent, amounting to $125, of which the sum of $25 was retained by the association and the rest was to be paid in monthly installments of $2.09 each; that she was also to pay the sum of $2.50 monthly dues upon her stock and $2.50 per month as interest upon her loan; that to secure said loan she assigned

her five shares of stock to the association and she and her husband, C. H. Payson, also executed the trust deed sought to be foreclosed, and that default had been made in the payments provided by said bond and trust deed; that by reason of said default said association, under the provision of its charter and by-laws, has elected to declare said obligation to be due and payable and the stock held as security forfeited, and to bring the suit to foreclose; that there was due to said association from said Clara D. Payson and C. H. Payson, under the terms and provisions of said bond and trust deed and the charter and by-laws of the association, the sum of $500, plus the amount in arrears, less the worth of the legal value of said stock. There was the usual prayer for accounting and relief. Appellants, Clara D. and C. H. Payson, filed their joint and several answer admitting the execution of the bond and trust deed and the assignment of the certificate of stock, and that there had been default in the payment of dues, interest, premiums and fines as provided for in the bond, but denying that there was due the sum of $500 plus the amount in arrears, less the withdrawal value of said stock. The answer charges that appellee was not engaged in the legitimate business of a building and loan association under the laws of the State, for the reason that it derived its revenues largely from subscriptions of large sums of money by single subscribers, who paid into the treasury such subscriptions at one time, and who do not make periodical payments of dues as provided by law; that it was used by money loaners and capitalists for illegal purposes, to the injury of small *bona fide* subscribers to the stock; that by reason thereof the association was not, by virtue of said bond and trust deed, entitled to recover more than the amount actually paid to said appellants, all of which they allege has been repaid. Defendant Martin answered that he had an interest in a portion of said premises by reason of his purchase of the same from Clara D. and C. H. Payson, since the giving of said trust deed, and denying that appellees were entitled to the relief sought. The master found in

favor of the association and that there was due to it, April 5, 1900, the sum of $598.51. This amount included in addition to the dues, premium and interest, certain taxes and insurance on the premises and a solicitor's fee of $50. Objections were filed to the report, which were overruled by the master, and the same were afterward ordered by the court to stand as exceptions. A decree was entered overruling said exceptions and foreclosing the trust deed for the payment of said sum and interest, amounting to $554.65, and a solicitor's fee of $50, from which an appeal was taken by Clara D. and C. H. Payson to this court.

It is insisted by appellants (1) that the contract was usurious; (2) that appellant Clara D. Payson was not allowed by the master or court for profits during the time payments were made by her; (3) that the fines charged against appellants were unreasonable and excessive; (4) that the solicitor's fee was improperly allowed; and (5) that the association was simply a subterfuge to permit capitalists to obtain greater interest upon their money than allowed by law, and was accordingly not entitled to avail itself of the provisions of the law relating to homestead loan associations.

In regard to the first claim, it is sufficient to say that as usury was not set up as a defense in the answer, that claim can not be now sustained. It is true that appellant Clara D. Payson was not allowed to participate in the profits of the association even during the time she made payments. Art. 2 of the by-laws of the association relating to dues, after prescribing the time when installments on stock should be paid and providing for a fine for neglect to pay the same, continued as follows:

" Any stockholder who shall neglect to pay such installments or dues for the space of six months, shall forfeit his or her stock and shall be entitled to receive the amount paid in, after deducting all fines and charges."

In Vierling v. Mechanics' and Traders' Saving Association, 179 Ill. 524, our Supreme Court quotes approvingly the following from Watkins v. Workingmen's Building Association, 97 Pa. St. 514:

" Where, in an action by a building association against a member for an amount borrowed by him from the association, for which amount the association holds the defendant's shares therein as collateral security, the defendant, having defaulted in the payment both of premium and interest on his loan, seeks the value of his stock, on account of his indebtedness, he will be entitled to credit only for the amount paid in by him on account of the said stock, and not to the value of the stock at the time of the trial."

Our court then proceeds to say :

" Under the rule indicated in the authorities cited, as Vierling was a defaulter, and had failed to comply with the by-laws of the association, and had failed to comply with his contract in the payment of interest and installments of principal, he could not share in the earnings of the association as did those members who had paid all obligations as provided by the by-laws and the contract they had entered into with the association."

Mrs. Payson had made no payments after September 7, 1897, and this bill was not filed until June 6, 1899. Appellants were therefore in default and were accordingly entitled to receive only the amount that had been paid in on the stock, after deducting all fines and charges, with the interest thereon, and this is what the court gave them, as appears from the statement made by the master in chancery.

Whether the fines imposed were excessive or not is not important here, as it appears from the report of the master that no fines were included in the statement of account made by him.

The trust deed provides that in case of default in any of the payments provided for as aforesaid, that " all of the moneys secured to be paid by this indenture, shall, upon such default, become immediately due and payable, including also a solicitor's fee of ten per cent of the principal amount of said bond to defray the expenses of foreclosing this trust deed." The solicitor's fee as fixed by the court was $50, which is the exact amount provided for by the trust deed, and it was also found by the master, whose report was approved by the court, " to be the usual, reasonable and customary com-

pensation for solicitors in this court for such services." The amount so fixed was therefore properly allowed by the court.

The main contention of appellants is that appellee permitted investors to buy paid-up stock in large amounts and participate in the profits, and that the association was merely a subterfuge to permit capitalists to obtain greater interest upon their money than allowed by law. Appellants rely upon Rhodes v. Mo. Savings & Loan Co., 173 Ill. 621, to sustain their contention. In that case, however, the rules of the association, which was a foreign corporation, provided for the sale of paid-up stock in large amounts, the holders of which were entitled to interest upon the same at six or seven per cent per annum, and also to participate in the profits. Our laws provide for no such plan of operation and consequently the court held that the company was not entitled to the benefit of the laws of this State to enforce its usurious claims. In the present case, however, there was no such provision made by the rules of the association, but they conformed strictly to the provisions of the statutes of the State. It is true that on several occasions the association borrowed money to pay off maturing or withdrawing stock, giving the lender stock for the same, entitling him to share in the profits. This, however, was not intended as a permanent investment. It occurred only a few times, and the loans were paid off just as rapidly as funds came to the association which could be used for that purpose. The object and purpose of the association was not to permit permanent investments in large amounts, but to do business according to law. For that reason the Rhodes case does not apply here, where the conditions are so different.

For the reasons above given the decree of the court below must be affirmed.