THE BORROWERS' AND INVESTORS' BUILDING ASS'N *et al.*

*v.*

CHARLES A. EKLUND *et al.* .

*Opinion filed April 18, 1901—Rehearing denied June 6, 1901.*

1. LOAN ASSOCIATIONS—*transaction between association and a borrower is a loan.* A transaction between a loan association and a member, whereby he executes a note and mortgage to the association and receives money thereon, is a loan of money to the member, and not a sale of his stock to the association.

2. SAME—*statute defines the measure of exemption from usury laws.* Section 11 of the act of 1879, concerning loan associations, (Laws of 1879, p. 86,) restricts the exemption from the usury laws to interest, premiums, fines or interest on such premiums as may accrue "according to the provisions of this act."

3. SAME—*association does not have unrestricted power to contract for usurious interest.* The act of 1879 does not confer upon loan associations unrestricted authority to enter into private contracts with stockholders for interest or premiums without regard to usury laws, but, on the contrary, prescribes the modes for making such loans.

4. SAME—*what necessary to avoid operation of usury laws.* Under section 8 of the act of 1879, (Laws of 1879, p. 86,) in order to avoid the imputation of usury and the forfeiture of all interest consequent thereon, a loan association must either publicly offer loans at a regular meeting to the stockholder who will bid the highest premium, or it must fix, by a by-law, a uniform rate of premium at which stockholders may borrow money, in the order of their applications and without distinction.

5. SAME—*association cannot contract for any premium borrower will pay.* The privilege of a loan association to contract for premiums

is not an unbridled license to exact any rate of premium the stress of affairs of each individual borrower may induce him to pay, without reference to the modes prescribed by statute for making loans.

6. USURY—*defense of usury must be specially pleaded.* If a party to a bill in equity desires to rely upon the defense of usury he must specifically allege the facts wherein the usury consists. (*Lurton* v. *Jacksonville Building Ass.* 187 Ill. 141, explained.)

*Eklund* v. *Borrowers', etc. Building Ass.* 91 Ill. App. 657, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. ROBERT W. HILSCHER, Judge, presiding.

The appellant association is a corporation duly organized under the general statute of the State entitled "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such association." (Starr & Cur. Stat. 1896, chap. 32, par. 108, p. 1045.) It exhibited in the circuit court of Will county a bill in chancery praying for the foreclosure of a certain mortgage on a city lot in the city of Joliet, given on the 19th day of June, 1889, by the appellees, to secure a note in the sum of $1400, executed by the appellee Charles A. Eklund and payable to the appellant association. While this bill was pending, and before answer had been made thereto, appellant William C. Barber was appointed liquidator of the association. On the 13th day of December, 1898, under leave of the court first given, said liquidator filed an amended and supplemental bill in the cause, in which he alleged that on the 19th day of June, 1889, appellee Charles A. Eklund became indebted to said association in the sum of $1400, for which he executed his note, payable eight years after date, with interest at the rate of one-half of one per cent per month; that to secure the payment of said sum said Eklund, and Emma J., his wife, executed a mortgage upon the premises in question, being the note and mortgage set forth in the original bill; and further averred that

Eklund afterwards became indebted to said association in the further sum of $400, and on the 18th day of November, 1891, executed a note of that date, payable to said association, for that amount, similar in its terms to the note above mentioned; that to secure said note for $400 Eklund and wife also executed at the same time a second mortgage to the association on the same premises, and that default had been made in the payment of said sums secured by each of said notes and mortgages, and praying for a decree foreclosing each of said mortgages.

Defendants, by way of answer, in substance alleged that at the date of the transactions in question they could not read the English language; that they were ignorant of the true import of the notes and mortgages entered into by them, and were induced to sign the same through the misrepresentations of the secretary of said association, who led them to believe that they were executing said instruments to secure smaller amounts of money than those actually named therein, and that by reason of such fraud both said notes and said mortgages were wholly void and of no effect. They also alleged that said loans were not made in accordance with the law requiring the money in the treasury to be offered for loan in open meeting and sold to the highest bidder, or under a by-law fixing a general rate of premium; that they were paid only $850 for the $1400 note- and only $250 for the $400 note, and that therefore the loans were usurious and not enforceable against appellees.

There was a. decree in the circuit court in favor of the appellant association, finding there was still due on the two notes described in said mortgages the sum of $1568.20, and directing the foreclosure of said mortgages and the sale of said premises to pay said amount, together with the costs, including $80 solicitor's fees, from which an appeal was prayed to the Appellate Court for the Second District. The Appellate Court held that the defense of usury should have been sustained by the chancellor, and

that the appellee Charles Eklund was entitled to have the various amounts paid by him on the two several notes credited as payments on the principal sums thereof, respectively, and that the payments shown by the evidence to have been made by said appellee on the first of said notes—that for $1400—had fully discharged the same, and that the decree of foreclosure should have been refused as to the mortgage lien given for the security of that note; that the payments made by said appellee upon the second of said notes—that for $400—had not equaled the amount of the note, and reversed the decree and remanded the cause, with directions to the circuit court to enter a decree of foreclosure for the balance so shown to be unpaid on the note for $400. The association and the liquidator have perfected an appeal to this court.

BENJAMIN OLIN, GARNSEY & KNOX, and HILL, HAVEN & HILL, for appellants:

If the directors of a homestead loan association organized under the Illinois statute, while acting within the scope of the powers conferred upon such association, make a loan of money to a member to build a dwelling house, and in the transaction there is irregularity in not offering the money and in not bidding the premium for priority of loan in open meeting, but the money is actually paid to the borrower and his note and mortgage are duly executed therefor, the borrower, in such case, is estopped to dispute the validity of the note and mortgage on the ground of such irregularity or omission. *Lurton* v. *Building Ass.* 187 Ill. 141; 87 Ill. App. 395; *Bates* v. *Loan Society,* 65 id. 529; *Building Ass.* v. *Cady,* 55 id. 469; *Kadish* v. *Building Ass.* 151 Ill. 531; *Building Ass.* v. *Bank,* 181 id. 44.

Irregularity, etc., on the part of the officers of the corporation in executing its powers is not material if the officers acted within the general scope of the authority conferred by the legislature upon the corporation and performed their part of the contract; and third parties

concerned cannot set up such irregularity to avoid performance on their part.   *Building Ass.* v. *Bank*, 181 Ill. 44; *Kadish* v. *Building Ass.* 151 id. 531.

Irregularity, etc., in effecting the loans does not make the premium taken or the transaction usurious, unless there is proof of a corrupt purpose to evade the usury laws.   *Moody* v. *Hawkins*, 25 Ark. 191; *Redwin* v. *Building Ass.* 54 Ga. 474; 2 Rice on Evidence, sec. 501, p. 1302, and pp. 1301, 1303, and cases cited.

The premium is not interest on money in any proper sense, but is an agreed price or bonus for preference, and is, moreover, a trust fund set apart or used for the benefit of all the members in common, including the party paying.   *McLaughlin* v. *Building Ass.* 62 Ind. 264; *Bowker* v. *Loan Ass.* 7 Allen, 100.

C. W. BROWN, for appellees:

The mind of the party making a deed must accompany the signing, and if it do not, save where his negligence prevents, the instrument is void *ab initio*.   *Railroad Co.* v. *Shumick*, 65 Ill. 229; *Leach* v. *Nichols*, 55 id. 273; 2 Parsons on Contracts, 783; *Sawyer* v. *Building Ass.* 103 Mich. 228.

Premiums should be fixed by bidding.   *Bates* v. *Loan Ass.* 42 Ohio St. 671; *Stiles' Appeal*, 95 Pa. St. 122; *Brown* v. *Archer*, 62 Mo. App. 289; Endlich on Loan and Building Ass. secs. 378, 394, 396; *State* v. *Building Ass.* 29 Ohio St. 92; *Meyers* v. *Building Ass.* 75 N. W. Rep. 944; *Douglass* v. *Kavanaugh*, 90 Fed. Rep. 373; *McCauley* v. *Building Ass.* 97 Tenn. 421; Thompson on Building and Loan Ass. (2d ed.) sec. 191.

A loan of money made by an association, and the note and mortgage executed by the borrower, represent a debt due from the borrower to the association for the money loaned.   *Loan Ass.* v. *Keith*, 153 Ill. 616.

When the secretary of a loan association is given, even tacitly, the management of its affairs, it will be bound by his acts under such extended authority.   Am. & Eng. Ency. of Law, (2d ed.) 1081; *Loan Ass.* v. *Nubling*, 170 Ill. 245.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

The transactions between the appellees and the appellant association were not sales of their stock to the company, but were loans of money to the appellees. (*People's Loan and Homestead Ass.* v. *Keith,* 153 Ill. 609.) The same is the view taken by the courts of last resort in Connecticut, Iowa, Kentucky, Maryland, Nebraska, New York, North Carolina, Pennsylvania, South Carolina, Texas and West Virginia. 4 Am. & Eng. Ency. of Law, (2d ed.) p. 1056.

It appeared from the proof that by the first of these transactions the appellant association obtained the note of the appellee Charles Eklund in the ordinary form of a negotiable note for the sum of $1400, payable eight years after date and bearing interest from date at the rate of one-half of one per cent per month, payable monthly,— that is, at the rate of six per cent per annum, and payable monthly,—and paid to the appellee for said note the sum of $850, less the costs and expenses of making the loan. By the other transaction the appellant association obtained the negotiable note of the appellee for the sum of $400, due also eight years after its date and bearing interest from date at the same rate as the other note, viz., six per cent per annum, payable monthly, and the appellee received from the appellant association $250 (less the costs and expenses of making the loan) for the note of $400. It was then legal to contract in writing to receive interest at the rate of seven per cent per annum. At this rate the interest on $850 for eight years would be $476, making a total of principal and interest of $1326. Under this contract appellee could only discharge the liability created by the loan of $850 to him by paying six per cent interest on $1400 for eight years, which would amount to $672, and the sum of $1400 in addition, which would comprise a total of $2072. Thus the appellee would be required, on this loan of $850, to pay $746 more than the

interest laws of the State permit to be exacted by individuals or associations not exempted from the operation of the usury laws.

The other transaction is, in proportion, equally oppressive. The interest at seven per cent—the highest legal rate—on $250 (the amount received by appellee) for eight years would be $140, which, together with the amount loaned and to be re-paid, would make a total of $390 to be paid by appellee. The contract by which he received the $250 would require him to pay six per cent interest on $400 for eight years, a total of interest of $192, and also pay the principal sum named in the note of $400, making a total of $592. Thus, in this loan of $250 appellee would be required to pay $202 in excess of the greatest amount the interest laws of the State permit to be exacted from a debtor whose creditor has no special exemption from the operation of the usury laws. The transactions must therefore be considered as usurious, unless it shall be found that associations of the class to which this appellant association belongs have authority of law to enter into contracts such as are here shown to have been made, to receive interest at rates which would render the contract for the payment of interest illegal under the general interest and usury laws of the State.

Section 11 of the act under which this association was created (Hurd's Stat. 1899, par. 88, p. 454,) confers on this association that measure of exemption from the operation of the interest laws of the State which it is entitled to enjoy. Section 11 is as follows: "Corporations organized under this act being of the nature of co-operative associations, therefore no interest, premiums, fines nor interest on such premiums that may accrue to said corporation, according to the provisions of this act, shall be deemed usurious and the same may be collected as other debts of like amount may be collected by laws in this State."

The exemption of this section is restricted to interest, premiums, fines or interest on such premiums that may accrue "according to the provisions of this act." In order to be protected from the consequences which would otherwise attach to a transaction usurious under the general laws of the State, associations organized under this act must observe the provisions of the statute enacted for the purpose of authorizing the course of dealing to be pursued with their borrowing stockholders. The statute does not by any means invest these associations with unrestricted authority to enter into private contracts with individual stockholders for interest or premiums without regard to the general laws limiting the rate of interest which may be lawfully contracted for. On the contrary, there are but two modes by which such associations may make loans of this privileged character. These modes of procedure are set forth in section 8 of the act under which such associations have existence. The provisions of this section, so far as here material to be considered, are as follows: "The board of directors shall hold such stated meetings, not less frequently than once a month, as may be provided by the by-laws, at which the money in the treasury, if $100, or more, shall be offered for loan in open meeting; and the stockholders who shall bid the highest premium, for the preference or priority of loan, shall be entitled to receive a loan of $100 for each share of stock held by said stockholders; the said premium bid may be deducted from the loan in one amount, or may be paid in such proportionate amounts or installments, and at such times during the existence of the shares of stock borrowed upon, as may be designated by the by-laws of the respective associations: *Provided,* that any such association may, by its by-laws dispense with the offering of its money for bids in open meeting, and in lieu thereof loan its money at a rate of interest and premium fixed by its by-laws, and either with or without premium, deciding the preference or pri-

ority of loans by the priority of the applications for loans of its stockholders."

These modes of making loans and contracting for interest by way of premiums were not declared by the legislature for the mere purpose of directing an orderly manner of business procedure for the associations, but for the purpose of operating as a restraint upon the power of such associations to enter into oppressive contracts for interest or gains for the use of their money. The appellant association did not adopt a by-law dispensing with the statutory requirement that it should offer its money for bids at open stated meetings of its board of directors, as it had authority to do under the proviso to the section. Nor did it offer its money to appellee and its other stockholders at public meetings of its directors, to be loaned at the highest premiums which might be bid for it, but without any authority of law whatever, or any by-law fixing a stated general rate of premium, it assumed authority to enter into private contracts with appellee, as one of its stockholders, for the payment of the greatest rate of premium which it could induce him to consent to pay. The plan marked out by the statute, of requiring the association to offer its money for sale at a regular stated meeting of its directory for the highest rate of premium which its stockholders were willing to bid therefor, or the other alternative plan authorized by the provisions of said section 8, but not adopted by this association, of fixing a rate of premium by a general by-law applicable to all and uniform in its operation as to all stockholders, are the only two plans to be followed in order to exempt a loan, otherwise usurious, from the operation of the general interest laws of the State. Under neither of these plans can an association, by private contract, demand and fix the rate of premium to be paid by each individual borrower in view of and based upon the necessities, improvidence, weakness, ignorance or present stress of adverse circumstances of the

borrower.   The premium is a bonus paid by the stockholder for the privilege of being preferred as a borrower over other stockholders.   If contracted for in the way of a bid at a public meeting of the directory or fixed at a uniform rate by a general by-law of the association it may be lawfully collected, though, as between individuals, it would be but the payment of a greater sum or rate for the use of money than the law permits, and would taint the transaction between individuals with usury. The privilege to contract for premiums accorded to these associations is not an unbridled license to exact any rate of premiums the present situation or stress of the affairs of each individual borrower may induce him to consent or agree to pay.   On the contrary, if they would avoid the imputation of usury and the forfeiture of all interest consequent thereupon, they must, whenever they have as much as $100 in the treasury, either publicly offer the same at a regular meeting of the board of directors, to be loaned to the stockholder who will pay the greater premium therefor, or they must fix by a by-law a uniform rate of premium at which their stockholders may borrow their money, in order as their applications are filed and without distinction between stockholders.   Such associations have power to offer their money (when they have more than $100 in the treasury) to be loaned to the highest bidder at stated meetings of their directors, or to loan it to the stockholder first applying therefor under a by-law fixing a uniform rate of premium to be paid by all borrowers, and obtain more than the rate which may otherwise be contracted for, but they have no power to contract to loan on private terms of contract without incurring the same liabilities the law would visit on other offenders against the interest laws of the State.

The Appellate Court did not err in deciding the transactions under review were usurious and that the association had forfeited the right to collect any interest

whatever, but that only the sums loaned should be required to be re-paid by the appellee.

Counsel for the appellant association are in error in asserting this court announced a different doctrine in *Lurton* v. *Jacksonville Building Ass.* 187 Ill. 141. The defense of usury sought to be interposed in that case was based on a clause in the mortgage there involved which provided that in default in the payment of taxes and insurance on the mortgaged premises the mortgagee might pay the same, and any money so paid should bear interest at the rate of eight per cent per annum, being one per centum in excess of the highest legal rate. The trial court disallowed interest upon such payments and held the agreement to pay the usurious rate per centum applied only to those advances, and we affirmed this action of the trial court. In that case the money was not offered to the highest bidder at a stated meeting, but the directors arbitrarily fixed the premium, and the defense based upon this state of the case was not that of usury, but that the note and mortgage were absolutely void, and we held the appellant was estopped to insist the note and mortgage were illegal and void. The rule is, usury must be specially pleaded, (Rev. Stat. chap. 74, sec. 7, p. 615, entitled "Interest,") and if a party to a bill in equity desires to rely on the defense of usury he must specifically allege the facts wherein the usury charged consists. (*Goodwin* v. *Bishop,* 145 Ill. 421.) The defense of usury in the *Lurton case* did not present the question arising on this record. If the defense in this case had been that the notes and mortgages sought to be foreclosed herein were void, as was the defense sought to be made in the *Lurton case,* the ruling here would be, as it was in the *Lurton case,* adverse to that defense.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*