## L. H. LAIDLEY et al., Appellants, v. GEORGE T. CRAM, Trustee et al., Respondents.

### St. Louis Court of Appeals, November 25, 1902.

1. **Usury:** BUILDING AND LOAN ASSOCIATION. The transactions which are the basis of plaintiff's claim that usury was exacted of them on certain moneys borrowed by them from a building and loan association, examined and held to afford no proof that usury was exacted.

2. ———: ———: INTEREST: PREMIUMS. *Held*, that if the sums charged as premiums on a loan are to be treated as interest on the assumption that they were fixed arbitrarily instead of by free competitive bidding, the total rate of interest charged per year can not be calculated on the facts in the record; for to do that exactly the loans would have to run until the stock matured; while to do it approximately, proof must be made as to when the stock would probably mature. In this case the premiums claimed to be usurious are not distributed as monthly payments over the months the loans were to run, nor is there any fixed date of maturity in the bonds; they were to mature when the stock of the association did.

3. ———: ———: ———: ———: BONDS: LOAN. The bonds named five per cent as the interest to be charged on the loans; plaintiffs contend that any sum charged as premiums above five per cent is usurious because, as five per cent is the interest named to be paid, whatever other interest was charged was not agreed to be paid in writing. *Held*, that if the premiums are to be treated as interest because not fixed by bidding they were either agreed to be paid in writing or not agreed to be paid at all, since the bonds are the only evidence of the agreements made by the association and the borrowers. *Held*, further, that unless such premiums by an annual apportionment through all the years of the loan, when added to the five per cent interest, make the total interest charged in excess of what may be lawfully agreed on in writing, the loans were not usurious.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

**AFFIRMED.**

*Given Campbell* for appellants.

(1) The loans in question were usurious, not made in accordance with the law of the State, or the by-laws of the association. The money was not offered to the shareholders in open meeting, and neither of said shareholders made any bid in such open meeting of any amount of premium upon said loan. The loan was not put up at auction and awarded to the member who bid the highest premium for the same. There was no competitive bidding. In such case the loan is usurious. R. S. 1889, sec. 2812; Brown v. Archer, 62 Mo. App. 289; Moore v. Bldg. Assn., 74 Mo. App. 470. (2) The evidence shows that there was no written application on the part of either Barnes or Laidley, offering any rate of premium for the loans, and a verbal engagement to pay more than six per cent interest is not binding. R. S. 1889, sec. 5973. (3) Laidley, though assuming the bond of Barnes, was not debarred from pleading usury under the bond. Miller v. Bldg. Ass'n, 83 Mo. App. 669; Am. Rubber Co. v. Wilson, 55 Mo. App. 565; Voorhis v. Staed, 63 Mo. App. 370. (4) If the loans were infected with usury the action was properly brought. It is elementary law that the mortgagor, or the purchaser from a mortgagor, when the loan bears usurious interest, may maintain an action for an accounting and cancellation of his mortgage. Link v. Bldg. Ass'n, 89 Pa. St. 15; Thornton on Bldg. and Loan Assns., secs. 310.

*H. M. Pollard* for respondent.

"It is a well recognized doctrine that payments of dues upon the stock are not payments upon the mortgage debt, and do not, *ipso facto,* work an extinguishment *pro tanto* of the mortgage." Such is also the doctrine in Pennsylvania. Ass'n v. Sutton, 35 Pa. St. 463; Ass'n v. Ass'n, 46 Pa. St. 493; Link v. Ass'n 89 Pa. St. 15; Ass'n v. Hungerbuehler, 93 Pa. St. 258. In the following cases, in addition to those cited above,

it is held that building association loans to its members are not usurious, regardless of the amount of premium they bid and regardless of the rate of interest they pay. They hold that it is in reality a purchase of stock, an advance for the mutual benefit of all the stockholders, and that if the association is prosperous the profits may be such that the borrower will never be called on to pay even his whole principal debt. Siler v. Barnes, 6 Bingham (N. C.) 180; Ass'n v. Webster, 25 Bar. 263; Ass'n v. Richards, 21 Ga. 592; Ass'n v. Vandevere, 3 Stock (N. J.) 383. In determining the question of usury, stock payments are to be disregarded. Mulloy v. Ass'n, 2 MacArthur 594; Ass'n v. Brockett, 58 Ill. App. 204; Abbott v. Ass'n, 8 Tex. 467; Ass'n v. Cannon, 96 Tenn. 599.

GOODE, J.—We will make up our statement of the facts of this case principally from the statement prepared by counsel for the appellants, which seems to be full and fair.

The respondent, the Underwriters Building & Loan Association, was organized under the laws of Missouri, March 31, 1887, and proceeded to issue shares of capital stock of the par value of two hundred and forty dollars each. On March 7, 1890, Gilbert H. Barnes, subscribed for thirty shares of stock in the second series and about the same time applied for a loan of $7,200 on said shares and a parcel of ground in the city of St. Louis. The loan was made and Barnes executed his bond secured by deed of trust to the association for $7,200. On October 5, 1891, he and his wife sold, conveyed and assigned his interest in the ground and stock to the appellant, L. H. Laidley, who assumed the debt, and on the same day Laidley applied to the association for an additional loan, agreeing to subscribe for eighteen additional shares of stock in the third series. This loan was granted and Laidley executed his bond to the association for the sum of $4,320, secured by deed of trust on his shares of stock and the real estate he had bought from Barnes.

When the first loan was made to Barnes, the association withheld eighteen hundred dollars as twenty-five per cent premium bid by Barnes for the loan, paying him the balance or $5,400; and when the second loan was made the association withheld seven hundred and fifty dollars, paying Laidley $3,570, thus keeping back twenty per cent of the amount of the loan, claiming that Laidley had bid that premium.

Appellants contend no premium was bid for either loan, but that these deductions from the amounts borrowed were arbitrarily exacted by the officers of the association and that when added to the interest stipulated they make the loan usurious.

In the view we take of this case we think it unnecessary to set out the testimony bearing on the question of whether or not premiums were bid within the meaning of the law, but the court below found they were.

Appellants state in their petition that they have paid on the first loan $5,914.76, and on the second loan $3,147.18, or in all $9,061.34; whereas the amount of cash received on the two loans was only $8,970 and that, therefore, the loans have been more than paid; the idea being apparently that no interest accrued on the loans at all during the years they have been running, because usurious interest was exacted and that the excess paid on the first loan above the face of the bond ought to be applied in discharge of the balance due on the second bond.

The undertaking of the borrower in each of the bonds was of the same form, and the following from the Barnes bond will show what it was:

"Said Gilbert H. Barnes in consideration of such loan has covenanted and agreed to and with said association, and hereby now does covenant and agree that he will henceforth well and truly pay to said association, or its legal representatives, on such day as may now or hereafter be fixed by the by-laws, the sum of one dollar as a monthly installment on each of the said thirty shares of said stock and being the sum of

thirty dollars per month, and also on the same day the sum of thirty dollars as monthly interest on said seven thousand and two hundred dollars, such payments to continue until each share of said stock shall be worth on the books of said association the sum of two hundred and forty dollars and that then the sum so expended by said association shall be repaid to it by the absolute surrender to and cancellation by said association of said shares of stock.''

This suit was brought to have a threatened sale under the first deed of trust enjoined, an accounting taken, the two bonds decreed discharged and the deeds of trust cancelled. On the hearing below, plaintiffs' bill was dismissed and they appealed.

The above is all we think necessary to state of the facts, because, putting aside the propositions of law discussed by counsel, we have been unable to detect usury in either of the transactions.

The first loan was made to Barnes when it was lawful for parties to contract in writing to pay ten per cent interest and the bond executed by Barnes to the association bound him to pay thirty dollars a month or three hundred and sixty dollars a year interest; that is, five per cent on the amount of the bond, to-wit, $7,200. He received from the association $5,400 and ten per cent on that sum would be five hundred and forty dollars a year.

The bond given by Laidley bound him to pay eighteen dollars a month interest or two hundred and sixteen dollars a year. This loan was subject to the eight per cent statute and eight per cent of $3,570, the amount actually paid to him, would be $288.60 a year.

With these facts before us, let us take appellants' own showing as to usurious interest as put by their counsel in his brief:

''The merest glance at these transactions shows that the interest was usurious. The interest on $5,400, the amount received by Barnes from the association at five per cent a year, is $270; and the interest on the $1,800 premium charged him for his loan at five per

cent a year is $90. This $90 added to the $270 makes $360 interest on $5,400, per year, which is six and two-thirds per cent interest on $5,400; then assuming that the loans and stock would mature in ten years, the $1,800 premium which was deducted, divided into ten payments, and annually added to the interest on the $5,400, would make the rate of interest ten per cent on the amount actually received by the borrower.

"The same considerations apply to the Laidley loan. Hence, the loans having not been made in accordance with the law, and the by-laws of the association, any agreement made to pay more than six per cent interest should have been in writing."

We see, therefore, that appellants' counsel himself computes the rate of interest charged on the first loan at ten per cent; and, we find by applying his method to the second loan, that the rate charged thereon was less than eight per cent, if it is borne in mind that the evidence shows the shares of stock failed to mature to par in ten years.

The bonds executed by Barnes and Laidley do not, as such instruments often do, fix a definite period, or number of months during which payments shall be made and then cease, but provide for payments until the stock matures; though we do not say that makes any difference. Bertsche v. Association, 147 Mo. 343. Neither do they designate a sum to be paid monthly as premium throughout the whole time the loans last; but the entire premiums were deducted at first from the face of the loans and the balance paid to the borrowers. If the premiums are treated as interest on the assumption that they were fixed arbitrarily instead of by free competition, the total rate per year of interest charged can not be calculated on the facts before us; for to do that exactly the loans would have to run until the stock matured, while to do it approximately testimony is needed as to the time when it will probably mature. Robertson v. Ass'n, 10 Md. 397; Association v. Flach, 1 Cinc. Sup. Ct. (Ohio) 468; Hagerman v. Ass'n, 25 Ohio St. 186.

Appellants' theory of the case is this: six per cent is the highest rate of interest the statute allows to be charged unless a higher rate is agreed to in writing, and inasmuch as the borrowers, Barnes and Laidley, agreed in writing to pay five per cent, they can not be held, therefore, to have agreed in writing to pay above that rate; so that whatever was exacted above six per cent was illegal; and on this theory they contrive to figure the loans as usurious.

But that theory is erroneous. The decisions in this State construing the building and loan association statutes have established the rule that unless the premium to be paid is fixed by competition or a chance to compete, the premium becomes interest, and if, when this is added to the interest stipulated, the sum exceeds the highest rate lawful in ordinary cases, the loan is usurious. But the sums withheld in the transactions in question were either actual premiums because fixed by competition, or constructive interest because not thus fixed. In either case they were included in what the borrowers agreed in writing to pay, else they were never agreed to be paid at all; and, hence, if by construction of law they fall within the classification of interest, the loans ought not to be construed as usurious unless the entire interest charged exceeds what may be stipulated in writing.

It is true that when there was no bidding, the decisions treat the whole excess of interest above the rate specified in the note or bond as usury, if the monthly premium plus the specified rate exceeds what it lawful when agreed in writing; which is certainly going far enough and further than can be easily defended. Moses v. B. & L. Ass'n, 92 Mo. App. (St. L.) 484. But the courts have never tested the legality of the interest charged by comparing it with the interest rate that may be contracted for verbally.

Neither by appellants' method of calculation nor by the one adopted in Association v. Eklund, 190 Ill. 257, nor by any other that has occurred to us, was the interest rate of these loans excessive.

The judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.