THE HOME BUILDING AND LOAN ASSOCIATION OF AURORA

*v.*

GEORGE D. McKAY *et al.*

*Opinion filed October 24, 1905.*

1. MORTGAGES—*undisclosed intention to occupy property does not create homestead estate as against mortgagee.* A mortgage to a loan association to secure an advance of the entire purchase price of property not then in the possession of the purchaser covers the entire interest of the purchaser, and the fact that he carries out his secret intention to make it his homestead by moving into the property a few days after the purchase does not create a homestead estate as against the mortgagee.

2. EVIDENCE—*what evidence incompetent as hearsay.* Proof of a conversation between the proposed purchaser of a house and the proposed vendor, to the effect that the former intended to occupy the house as his home if he bought, is not admissible for the purpose of establishing a homestead estate as against a loan association advancing the purchase money, where the conversation was not in the hearing of any officer or agent of the association.

3. LOAN ASSOCIATIONS—*association complying with statute may loan at more than legal interest.* A loan association which complies with the statute in making loans may lawfully contract for greater compensation for the use of its money, by way of interest and premiums, than the legal rate of interest fixed by general law.

4. SAME—*more than one bidder for loan is not essential.* Where a loan association is acting under section 8 of the Homestead Loan Association act (Laws of 1891, p. 89,) by offering loans to the highest bidder, it is not essential to the validity of the loan that more than one bidder appear before the board, but only that opportunity be given for competitive bidding.

5. SAME—*effect where bidder for loan is not a stockholder at the time.* One who bids for a loan at the meeting of the board of directors of a loan association but who is not then a stockholder, cannot, after receiving the loan and becoming a stockholder, set up as a defense to foreclosure that as he was not a stockholder when he made his bid the loan was in contravention of statute and therefore not exempt from the general usury law; nor can such defense be urged by a subsequent mortgagee.

6. USURY—*defense of usury must be specifically set up.* The facts wherein alleged usury consists must be specifically set up in the answer to a bill for foreclosure, and the proof must be restricted to the allegations.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the City Court of Aurora; the Hon. JOHN L. HEALY, Judge, presiding.

C. I. McNETT, (L. E. EMMONS, and E. L. CHAPIN, of counsel,) for appellant.

SEARS & SMITH, and THEODORE WORCESTER, for appellees George D. McKay and Anna McKay.

FRANK G. PLAIN, for appellee the German-American Bank.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed by the appellant association to foreclose a mortgage given to it by the appellees George D. McKay and Anna McKay, his wife. The German-American Bank held a mortgage which was subsequent in point of time of execution and recording to that of the appellant association, and was made a party defendant. The McKays answered, alleging that the appellant association contracted for and exacted usurious interest in the execution of the mortgage, and that the mortgaged premises were their homestead, and that the acknowledgment of the mortgage was taken by a notary public, who was the owner of shares of the capital stock of the association, and that under the holding of this court in *Ogden Building Ass. v. Mensch,* 196 Ill. 554, the mortgage did not become a lien on the homestead estate. The answer of the appellee bank contained like allegations as that of the McKays with reference to the homestead interest; averred that the mortgage to the appellant association was not a lien on that estate, and set up an indebtedness of the McKays to the bank and the execution by them of a mortgage on the premises to secure the indebtedness to the bank, and that such mortgage waived and relinquished the homestead estate of the debtors in due form of law, and was lawfully acknowledged and became and was

the only lien on the homestead estate.   The bank also filed
a cross-bill asking for the foreclosure of its mortgage as
against the homestead estate.   On the hearing the defenses
presented by the McKays and the contention of the bank
were both sustained and decree entered accordingly.   On ap-
peal the decree was affirmed by the Appellate Court for the
Second District, and the further appeal perfected by the as-
sociation has brought the record into this court.

The appellant is a homestead loan association organized
under an act of the General Assembly of this State approved
June 10, 1879.   (1 Starr & Cur. Stat. p. 1045.)   The ap-
pellees McKay are husband and wife.   The mortgaged prop-
erty originally belonged to Ellen M. Danahy.   It consisted
of a lot and a part of another lot in the city of West Aurora,
upon which was a dwelling house.   The McKays contracted
to buy the property from Mrs. Danahy at and for the sum
of $6000, and procured the appellant association to loan
them that sum of money to be secured by a mortgage on the
premises, the McKays to become stockholders in the asso-
ciation in the same amount, and to re-pay the sum borrowed,
together with interest and premiums thereon, in accordance
with the by-laws of the association.   Mrs. Danahy and the
McKays appeared at the office of the appellant association.
The former had in her possession a deed duly executed and
ready to be delivered, conveying the property to George D.
McKay.   The bond or note to be given to the appellant asso-
ciation by the McKays for the sum of $6000 was executed
by the makers and a mortgage to secure the same was drawn
up and signed and acknowledged by the McKays, who ap-
plied for and had issued to each of them thirty shares of the
capital stock of the association.   When the papers were com-
pleted, the secretary of the association, to whom the mort-
gage was delivered, drew the check of the association for the
said sum of $6000, payable to the McKays.   They endorsed
the check and delivered it to the secretary, together with the
assignment of their shares of stock.   The secretary delivered

the check to Mrs. Danahy and received from her the deed for the premises to George D. McKay. The secretary delivered both the deed and the mortgage to the recorder and caused the same to be recorded, and when recorded the instruments were returned to the secretary and by him placed in the vaults of the association, where they have since remained. Four days after the delivery of the deed by Mrs. Danahy and the execution and delivery of the mortgage to the appellant association, and after these instruments had been filed for record, the McKays removed from another dwelling house which they occupied as tenants, into the dwelling house on the mortgaged property, where they have since resided.

The McKays, before the enactment of the act of May 15, 1903, (Laws of 1903, p. 120,) validating mortgages so defectively acknowledged as was the mortgage of the McKays to the association, executed the mortgage to the appellee bank, and legally therein waived and relinquished the homestead estate so far as the indebtedness to the bank was concerned. The contention of the bank is, that this validating act was inoperative as against the lien of the mortgage given to it, and that its mortgage constituted the first lien on the homestead estate of the McKays in the premises.

When the mortgage was executed and delivered to the association and filed for record the premises were not in the possession of the McKays, nor had they ever been in the possession thereof. They testified that they bought the property with the intention of removing to it and making it their homestead, and within four days thereafter they did remove to and occupy the mortgaged premises as a residence. It is insisted that this intention, and their subsequent act of moving into the dwelling house on the mortgaged premises and occupying the same as a homestead, created in the McKays a homestead estate therein at the time of the execution of the mortgage to the association, and that the mortgage to the association not having been so acknowledged as to legally

waive and relinquish their homestead estate did not consti-
tute a lien thereon in favor of the association.

We find no proof in the record even tending to show that
the appellant association, or any of its officers or agents,
were advised or had knowledge that it was the intention
of the McKays to occupy the premises as their homestead.
They had never been in possession of the property, nor had
they done any physical act in and about the property denot-
ing an intention to subsequently occupy the same. When
the mortgage to the association was executed there existed
only an undisclosed and unexecuted intention on the part
of the McKays to subsequently occupy the premises which
they were about to 'purchase. This secret and uncommu-
nicated purpose was not, of itself, sufficient to impress the
property with the character of a homestead estate as against
the appellant association. The McKays executed the mort-
gage to induce the association to advance to them the money
wherewith to enable them to buy the property, and it would
be highly inequitable and unjust to hold that a secret and
unknown intention as to the use they subsequently intended
to make of the property could operate to defeat the lien
of the mortgage by them voluntarily executed for the pur-
pose, so far as the association knew, of creating a lien against
the entire estate and interest which they were to receive by
the deed from Mrs. Danahy.

Our statute creates the estate of homestead in the house-
holder to the extent of $1000 in premises "owned or rightly
possessed, by lease or otherwise, and occupied by him or her
as a residence," and while, under some circumstances, the
purchase of property with the intention of occupying it as a
homestead, followed within a reasonable time by the actual
occupancy thereof as a residence, has been held to create the
estate of homestead even before there be an actual occupancy
thereof, yet we are cited to no authority holding that such
mere intention, not manifested or evidenced by some overt
act and not disclosed, can impress the property so intended to

be purchased for a homestead as against one whom such purchaser has induced to loan the money wherewith to buy the property, the re-payment thereof to be secured by a lien of a mortgage which such proposed purchaser voluntarily executes, without communicating the bare secret intent on his part to subsequently occupy the property so to be purchased as a homestead. The property was not occupied by the McKays when the mortgage was executed, nor had they done any act affecting the physical character of the property whereby any intention to occupy the same was manifested, nor had they communicated to the appellant association their purpose and intent as to the subsequent use to be made of the property, and no release of any such proposed or intended homestead rights or interest was necessary to be inserted in the mortgage in order that the lien thereof might have full operation and effect against the entire estate of the mortgagors in the property. The true rule applicable in the state of case disclosed by this record is thus expressed in 15 American and English Encyclopedia of Law, (2d ed. p. 579): "The intention must not be a secret and uncommunicated purpose, but must be shown by acts of preparation of a physical character, or by something equivalent. Mere intention of a man and wife to occupy premises purchased by the husband as their home, without any preparation to put such intent into execution, does not render the premises exempt as a homestead."

The court did not err in excluding the proffered proof that George D. McKay told Mrs. Danahy that if he purchased the property he desired to move there at once in order to save paying another month's rent in the home he then occupied. This conversation was not in the hearing of any agent or officer of the appellant association, and as to it the conversation was mere hearsay and incompetent to be produced in evidence against it.

We are therefore of the opinion that the chancellor erred in holding that the mortgage to the appellant association was

not a lien against the entire estate of the mortgagors in the mortgaged premises.

We think the defense of usury was not sustained. The interest provided in the note secured by the mortgage given by the McKays to the appellant association was at the rate of seven per cent per annum, but a premium of seven twenty-fourths of one per cent was contracted to be paid monthly, and the premium and interest exceeded the legal rate. But the association, if it complied with the provisions of the statute controlling the making of loans by such associations, could lawfully contract for a greater compensation, by way of interest and premium, for the use of its money than the legal rate fixed by the general interest laws of the State without being exposed to the consequences attaching under such general interest laws to contracts for the payment of a rate of interest in excess of the legal rate. (1 Starr & Cur. Stat. chap. 32, sec. 11, p. 1050; *Borrowers' Building Ass. v. Eklund,* 190 Ill. 257.) The association had not adopted a by-law fixing a rate of interest and premium at which its funds should be loaned and dispensing with the provisions of the body of section 8 of said chapter 32, requiring such association to loan its funds to the highest bidder at stated meetings of its board of directors, as it was empowered to do by the proviso to section 8. In the absence of such by-law it became incumbent upon the appellant association to make loans of its funds, at stated meetings of its board of directors, to the stockholders who should bid the highest premium for the preference or priority of a loan, as is required by the provisions of the body of said section 8. If the loan to the McKays was made in pursuance of these provisions of section 8 it is not to be deemed usurious, though the interest and premium contracted to be paid therefor exceeded the maximum rate of interest specified to be exacted by the general interest laws of the State.

On November 30, 1896, a stated meeting of the board of directors of the appellant association was convened, and

the following appears as a part of the record of the proceedings of that meeting, viz.: "Mr. George D. McKay appeared before the board and made a request for a loan; offered interest seven per cent and premium seven twenty-fourths of one per cent per month." This statement appears to have been interlined on the record of the proceedings of the board of directors, and such is conceded to be the fact. The secretary of the board testified that he wrote the record of the proceedings of the board, including the interlineation; that he interlined the statement in the record on the same evening or night of the meeting. He testified the interlined matter was correct and a truthful statement of what occurred; that the loan desired was for the full amount that the McKays were to pay for the property, and that the board considered seriously the question of requiring some additional security for the reason the amount desired to be borrowed was the full amount of the purchase price of the property to be mortgaged, and that McKay made a strong personal plea to the board to accept his bid for the loan. James Walker and Eb Denney, members of the board of directors, testified that they were present at the meeting of the board; that McKay appeared before the board with reference to the loan. Mr. McKay, when first produced, denied that he was present at that meeting, but when subsequently testifying, stated: "I testified before positively that I did not appear before the board of directors; now I want to modify by saying that I do not recollect it. I am not positive about it. I have no recollection." There was no evidence tending to impeach the truthfulness of the record as interlined, and the oral testimony tended, by the clear weight thereof, to establish the truthfulness of the statement that Mr. McKay appeared before the board at a stated meeting and offered to pay the interest and premium as set forth in the note for the loan he desired. It does not appear that there were others who were present and bid, or desired to bid, for loans of the funds of the association, but we do not construe the statute to re-

quire that there shall be more than one bidder present at a meeting at which a loan is made, but only that opportunity shall be given for competitive bidding, and that the priority or preference of a loan shall be awarded to the highest bidder. If but one bidder for a loan appears before the board at any stated meeting, the board may lawfully accept his bid, and the contract will not be usurious though the interest and premiums exceed the highest rate fixed by the general interest laws of the State.

Neither of the McKays was the owner of stock in the association at the time of the meeting of the board of directors when George D. McKay made his application and bid for a loan. A loan made to one not a holder of stock in the association would be in contravention of the statute, and such a transaction would not be exempt from the implication of usury. But we think it is fairly to be assumed that one who appears at a meeting of the board of directors of an association and bids for a loan does so with full knowledge that he must become a stockholder before he can lawfully receive the funds of the association by way of a loan or advance, and that his bid is on that basis. If the loan is awarded to him and he subsequently becomes a stockholder and receives the funds of the association as a loan to him in that capacity, he cannot be permitted to urge that he was not competent to bid for a loan at the time that he did so and that this irregularity taints the loan with usury. The defense of usury is presented by the appellees McKay, and not by the bank. But we think it cannot be well advanced by either the McKays or the bank. The mortgage to the bank given by the McKays contains a clause declaring the loan in favor of the bank to be subject to a prior mortgage executed by the McKays to the appellant association. If the mortgage given to the appellant was legal and valid as between the McKays and the association, it would be equally legal and valid as against the bank.

Whether a stockholder, when bidding for a loan, could object that a competing bidder was not a stockholder, and therefore incompetent to bid against him, is not here presented for decision.

The appellees McKay executed the note and mortgage on the 18th day of December, and at the same time the association paid the money out of its treasury. The note and mortgage given by the McKays were antedated to the 23d day of November, and the note bore interest from that last mentioned date. The suggestion the excess of interest thus received would constitute usury cannot avail. The statute provides that usury must be specially pleaded, and the fact wherein it is alleged the usury charged consists must be specifically alleged in the answer setting up that defense. (*Goodwin* v. *Bishop,* 145 Ill. 421; *Borrowers' Building Ass.* v. *Eklund, supra.*) That the notes given by the McKays were antedated is stated in the answer of the appellees McKay, but merely as a part of the history of the transaction. The facts specified as ground for the defense of usury are, that the appellees McKay were required, "by the terms of said note, to pay seven per cent per annum as interest, seven twenty-fourths of one per cent per month premiums and said fines, dues, penalties and forfeitures," and in that the association has been guilty of contracting for and exacting usury. The appellees McKay must be restricted to the charge of usury specified in the bill.

The decree of the city court of Aurora and the judgment of the Appellate Court affirming the same are each reversed, and the cause will be remanded to the city court of the city of Aurora, with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*