Ella M. Savage et al. v. Evanston Savings & Loan Association et al.

Gen. No. 4,494.

1. HOMESTEAD LOAN ASSOCIATION—*when money offered for competitive bidding.* *Held,* under the facts of this case, that a *prima facie* showing was made that the money loaned to the defendant

in the foreclosure proceeding was obtained by him after the same had been offered by the complainant association for competitive bidding, and that this *prima facie* showing is not rebutted by the fact that there was, in fact, no competition.

Foreclosure proceeding. Appeal from the Circuit Court of DuPage county; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed October 16, 1906.

WILLIAM A. BITHER, for appellants.

A. J. PFLAUM and LUCIEN E. HARDING, for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Henry G. Savage on January 10, 1896, borrowed from the Evanston Savings & Loan Association $10,000, evidenced by his bond of that date, and secured by an assignment of shares of the stock of said association and by a mortgage upon real estate in DuPage county. Payments were made upon the loan. Savage conveyed the mortgaged property to one Parker, and afterwards Savage died, leaving a last will and testament, and his widow, Ella M. Savage, executrix thereof, and leaving said Ella M. Savage and their son, Frank M. Savage, as the only heirs at law. Said Ella M. and Frank M. Savage made other payments. Thereafter the association passed into the hands of liquidators, and this bill was filed to foreclose the mortgage for the amount remaining unpaid. The association was organized under the homestead loan association law of the State of Illinois. Section 8 of that act requires the money in the treasury to be offered for loan in open meeting, and that the person bidding the highest premium shall have the priority of loan; but that the association may by its by-laws dispense with the offering of its money for bids in open meeting, and, in lieu thereof, loan its money at a rate

of interest and premium fixed by its by-laws, and either with or without premium, deciding the preference or priority of loans by the priority of applications for loans of its stockholders. The answer of Ella M. and Frank M. Savage averred that the association had no by-laws which dispensed with offering its money to loan at a competitive bidding, and that this money was not let at a competitive bilding, and that the rate of interest provided to be paid in the bond was greater than seven per cent. and usurious, and therefore all payments should be applied upon the principal, and that applying all such payments there was due upon said bond to complainants less than $2,530.08, and that on or before April 26, 1902, which was about a year and a quarter before the bill was filed, they tendered to complainants $2,530.08 in United States legal tender money, and the complainants refused to accept the tender, and that they have ever since been ready and willing to pay said sum. Effie M. and Henry M. Parker filed a formal answer, and the cause was referred to a master for proofs and a report of the same with his findings, and he reported that the loan was usurious; that because of said usury there was but $2,530.08 due under said bond on April 26, 1902; that defendant made a legal tender on that date to complainants of that sum, which tender was refused, and that said tender had been kept good by the defendants ever since; that the equities of the cause were with the defendants, etc. The court sustained exceptions to this report, and entered a decree in favor of the complainants for $6,923.50, and the sum of $50 for solicitor's fees. This is an appeal by Ella M. and Frank M. Savage from that decree.

The association had no by-law which authorized it to dispense with competitive bidding in making its loans. The bond given by Henry G. Savage called the interest seven per cent. per annum, but it bound him to pay $50 per month upon the shares of stock referred

to, and to pay as interest on said principal sum of $10,000, the sum of $58.33 1-3 per month until the principal sum was fully paid or each share of stock assigned should have attained the value of $100. Under the conditions of the bond, the interest paid at the close of the first month would be at the rate of seven per cent. per annum. But there being also then paid $50 upon the principal, the payment of $58.33 1-3 at the end of the second month would be at a higher rate of interest than seven per cent. upon the principal remaining unpaid, and the rate of interest would continually increase until the loan was finally paid. We regard it as settled by Borrowers Building Association v. Eklund, 190 Ill. 257, and Jamieson v. Jurgens, 195 Ill. 86, that such a transaction is not protected by the statute relating to building and loan associations, unless the money was let at a competitive bidding as by that law required.

The main question is whether the money was let at a competitive bidding. We will first consider the record kept by the association. It shows a regular monthly meeting of the board of directors of the association, convened at the time fixed by the by-laws, and that more than a quorum of directors was present; that after the monthly financial statement had been read and the semi-annual statement had been presented, "Money was offered for sale;" that Ethel C. Meers bid a premium of ten per cent. for a loan of $500 on certain shares of stock and on real estate security; that Thomas J. Currey bid a premium of twenty per cent. for a loan of $1,500 on certain shares of stock and on real estate security; that Thomas Craven applied for a loan of $2,200; C. A. Wightman for a loan of $1,500, and Henry G. Savage for a loan of $10,000, each offering shares of stock and real estate security, but not bidding a premium; that these five applications were referred to committees; that three other parties applied for loans for certain specified sums on

their notes and assignments of shares of stock as security; that the committees in the cases of Craven, Wightman and Meers made favorable reports and the loans to them were authorized, subject to the opinion of the attorney on the title; that the applications of Currey and Savage were approved subject to the unanimous approval of the security committee and the opinion of the attorney on the title; and that the three applications for loans on notes and shares only were approved and authorized. In other words, the association had money enough on hand to be loaned so that it accepted all the offers that were made. It is obvious that this makes a good case on paper that this money was offered for sale in an open meeting, and that bids or applications therefor were made and that all bids and applications for money were accepted. It is held in Home Building & Loan Association v. McKay, 217 Ill. 551, that what the statute requires is that an opportunity shall be given for competitive bidding, and that the priority or preference of a loan shall be awarded to the highest bidder, and that it is not essential that there shall be several persons bidding against each other, and that if but one bidder for a loan appears before the board at a stated meeting, his bid above the statutory rate may be accepted, and the contract will not be usurious. In other words, the statute only requires that an opportunity for competitive bidding be afforded at an open and stated meeting of the board at which all may attend, and that if there is competitive bidding the highest bidder shall receive the loan. The statute does not mean that if those who are present and asking for loans do not bid against each other, but only offer the same interest or premium and the association has for loan as much money as they all require, that the board is powerless to accept the offers.

The only oral testimony as to what occurred at that meeting was that of the secretary, who testified more

than eight years later. He said that at that meeting the money was offered for sale, but that none of the applicants were personally present, and that bidders were not usually present in person; that the applications were in writing; that they could not know whether there would be competitive bidding; that if they had received applications at a higher premium, the directors would have accepted them; that if a man wanted money very bad he bid a premium for it, but that the rates of interest on good loans were so low at that time that they could not get premiums and most of their loans were made without premiums. The only material difference between this and the McKay case, *supra*, is that here the applicant was not present in person. Savage's application was a bid or offer to pay the rate named therein for the loan. It was just as truly a bid as if he had been present. As he did not attend in person, he would have lost the loan by his absence if any one had offered more. His failure to be present indicated that he did not intend to bid any higher, if he was overbid. If the association had given him a preference for the bid over other bidders, it would have been a departure from a competitive bidding, but the society had money enough to supply them all. The order in which the committees reported and the board voted is unimportant, where there was money enough for all. It is obvious that those who wanted to borrow money either knew that there was as much money to be loaned as would be applied for, or else they did not intend to increase their offers if some one else bid higher, for otherwise it must be presumed they would have been present in person in order to increase their bids if it became necessary. It is no doubt true that under this course of procedure abuses could be covered up. But it is also true that if the money is offered for sale at an open stated meeting of the board, and if the association has money enough to loan to supply every one who bids or ap-

plies for money, and it does loan to each bidder all he asks at the rate he offers, the association has done all it can do, unless it refuses to loan its money or demands the personal presence of the bidders in order to see if it cannot excite a competition between them which would not exist if they knew there was enough to supply every bidder. We conclude that the absence of the bidders does not put the association in the position of having made usurious loans, but that the proofs put this case within the spirit of the McKay case.

It is therefore unnecessary to consider the effect of the subsequent attempt of the association to reduce the rate of interest on its loans. We find no reversible error in the record. The decree is, therefore, affirmed.

*Affirmed.*