## Charles A. Eklund et al. v. Borrowers and Investors' Building Association et al.

91    657
s190s 258

1. BUILDING AND LOAN ASSOCIATIONS—*Premiums to be Fixed by Free and Open Competition.*—The premium which is to be paid by a borrowing member of a building and loan association upon an advancement made to him, must be fixed by free and open competition between all the members applying for advancements.

2. SAME—*Requisites of Lawful Premiums.*—A premium, in order to be lawful, must be one established by a bid for the right of precedence in taking a loan, at a competitive sale of such right; and where there is no such bid or sale, there can be no lawful premium.

3. SAME—*Where the Offering of Loans in Open Meeting May Be Dispensed With.*—Under the act of 1891 a building and loan association may, by the enactment of proper by-laws, dispense with the offering of its money by bids in open meeting, and in lieu thereof loan its money at a rate of interest and premium fixed by its by-laws, either with or without premium, deciding the priority of loans by the priority of the applications; but it is powerless to do so without the enactment of a by-law to that effect.

4. USURY—*When a Loan of a Building Association is Usurious.*—When the money of a building and loan association is not let in open meeting, as provided by the statute, the premium is illegally fixed, and the contract is usurious.

**Mortgage Foreclosure.**—Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1900. Reversed and remanded, with directions. Opinion filed October 8, 1900.

C. W. BROWN, attorney for appellants.

BENJ. OLIN, GARNSEY & KNOX and HILL, HAVEN & HILL, attorneys for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit in chancery, brought by appellees to foreclose two mortgages executed by appellants to the Borrowers and Investors' Building Association of Joliet, Illinois.

The original bill was filed by said association on December 17, 1896, and alleged that it was a corporation, duly organized under a statute of the State of Illinois, entitled "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such association." That on the 19th day of June, A. D. 1889, appellant Charles A. Eklund became indebted to said association in the sum of $1,400, for which he executed his note, payable eight years after date, with interest at the rate of one-half of one per cent per month; that to secure the payment of said sum, said Charles A. Eklund and Emma J., his wife, executed a mortgage upon the premises in question; that Eklund afterward became indebted to said association in the further sum of $400, and on the 18th day of November, 1891, executed a note of that date to said association for that amount, similar in its terms to the note above mentioned; that to secure said note for $400, Eklund and wife also executed, at the same time, a mortgage on the same premises, and that default had been made in payment of said sums, secured by said notes and mortgages. On December 13, 1898, an amended and supplemental bill was filed, representing that on February 14, 1898, said association had gone into voluntary liquidation, and that William C. Barber, who was joined as a complainant, had been appointed its liquidator. Defendants by way of answer alleged that, at the date of the transactions in question, they could not read the English language; that they were ignorant of the true import of the notes and mortgages entered into by them, and were induced to sign the same through the misrepresentations of the secretary of said association, who led them to believe that they were executing said instruments to secure smaller amounts of money than those actually named therein, and that by reason of such fraud both said notes and said mortgages were wholly void and of no effect. They also alleged that said loans were not made in accordance with the law, requiring the money in the treasury to be offered for loan in open meeting and sold to the highest bidder, and that therefore the loans were usurious and not enforceable against appellants.

There was a decree in favor of appellees, finding there was still due on the two loans the sum of $1,568.20, and directing the foreclosure of said mortgages and the sale of said premises to pay said amount, together with the costs, including $80 solicitor's fees, from which an appeal was prayed to this court.

It appeared from the evidence that in 1889, appellant Charles A. Eklund, desiring to borrow $850 for building a house, consulted with August Eriksson, who was a country-man of his and a former employer, concerning the matter. Eriksson was a director of the appellee association and after explaining its method of making loans, recommended him to borrow money of it. Eklund therefore made his application to the secretary of the association and on June 19, 1889, subscribed for fourteen shares of stock in the association and received a certificate therefor. At the same time he executed the note and mortgage for $1,400 above referred to and received from the association $850, less a small amount retained by the secretary for expenses in making the loan. On November 18, 1891, desiring to borrow $250 more, he subscribed for four more shares of stock in the association, and executed the said note and mortgage for $400, receiving $250, less the expense of making the loan. The difference between the amount of the notes signed by Eklund and the amount received by him was in each instance the premium charged by the association upon the loan. The dues and interest on the first loan amounted to $14 a month and Eklund claimed that the secretary of the association told him that the payment of this amount for seventy-eight months would repay the loan in full. After making the seventy-eight monthly payments on the first loan, he applied to the secretary for a release, when he was informed that he was still owing several hundred dollars on the loan. He thereupon refused to make any further payments upon the same. He continued, however, to pay upon his second loan until April, 1896, when he ceased to make further payments.

The contention of appellant is, first, that the notes and

mortgages in question are invalid because at the time of the execution of the same, appellants were ignorant of their contents and were misled by false statements made by the secretary of the association and, second, that the premiums charged upon the loans were illegal for the reason that the money was not offered for loan in open meeting and no bid was made for the same by Eklund. As to the first contention, we do not find from a preponderance of the evidence that Eklund was induced to sign the notes and mortgage, and his wife to sign the mortgages, by misrepresentations made to them, or either of them, by the secretary of the association, nor that Eklund was ignorant of the step he was about to take. It appears that prior to the transaction he was fully informed by his friend Eriksson of the manner in which the association transacted business, and the secretary denies that misrepresentations were made by him to Eklund or his wife.

We are of opinion, however, that the second contention of appellants above referred to is well founded, as it is unquestioned that Eklund made no bid in open meeting for either of his loans. It is said by Endlich in his work on the Law of Building Associations, 2d Ed., Sec. 407:

" The premium which is to be paid by any member, upon an advancement made to him by the society, must be fixed by free and open competition between all the applicants, and in no other way. Hence a premium, in order to be lawful, must be one bid for the right of precedence in taking a loan, at a competitive sale of such right; and where there was no such sale and no bid, there can be no lawful premium."

Section 8 of the statute in relation to Homestead Loan Associations in force at the time the first loan was made, provided:

" The board of directors shall hold such stated meetings, not less frequently than once a month, as may be provided by the by-laws, at which the money in the treasury, if one hundred dollars or more, shall be offered for loan in open meeting; and the stockholders who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of one hundred dollars for each share of stock held by said stockholder."

Eklund v. Borrowers & Investors' Building Ass'n.

In 1891 it was provided that such an association might, by its by-laws, dispense with the offering of its money for bids in open meeting and in lieu thereof loan its money at a rate of interest and premium fixed by its by-laws and either with or without premium, deciding the preference or priority of loans by the priority of the application for loans of its stockholders. The amendment is unimportant, however, for the reason that the association in question never passed any by-laws dispensing with the offering of its money for bids in open meeting. The money not having been let in open meeting as provided by statute, the premium was illegally fixed and the contract was usurious. McCauley v. Building & Savings Association, 97 Tenn. 421; Brown v. Archer, 62 Mo. App. 289; Bates v. People's S. & L. Assn., 42 Ohio St. 671; Forsell v. Suddard, 90 Ill. App. 407, Chicago Legal News of August 4, 1900, p. 415.

We are therefore of opinion that the transaction in question must be treated as a loan by the association to Eklund of $850 in the first instance and $250 in the second, concerning which there was a contract to pay usurious interest. Under such circumstances Eklund is entitled to have the several amounts paid by him upon each note credited upon the principal of such note. The proof shows that he had paid upon the first note at the time he refused to make further payments, more than $850, and the indebtedness secured by the same was therefore discharged. At the time he refused to pay more upon the second note, however, he had paid less than the sum of $250, and was in default as to the balance. Appellees were, therefore, entitled to foreclose their second mortgage for the amount remaining unpaid upon the same.

The decree will be reversed and the cause remanded with directions to the court below to enter a decree for the amount due appellees upon the second mortgage, after giving credit for all payments made upon the same. Reversed and remanded.