## Assets Realization Company v. Ferdinand D. Heiden, et al.

### Gen. No. 11,389.

1. Homestead Loan Association—*when contract ultra vires a.* A contract by which a homestead loan association .undertakes to pay to the holder of stock certificates the full value of one hundred dollars, for each share at the end of six years from the date of such certificates, is *ultra vires* a homestead loan association, and this notwithstanding the statutory provision authorizing the issue of shares of stock in periodical series, each class having a different fixed periodical payment of dues, the payment of which "shall continue on each share until the same shall have reached maturity value or is withdrawn or retired," where the issuance of such stock was prior to the enactment of such statute.

2. Homestead Loan Association Act—*when complainant cannot have benefit of.* A corporation in effect doing a banking business is not entitled to the benefit of the Homestead Loan Association Act and cannot enforce fines and premiums by foreclosure where, but for such act, they would be usurious.

3. Premium—*when contract providing for payment of, invalid.*

Assets Realization Co. v. Heiden.

Where a borrowing member of an association did not obtain his loan as a result of the money being offered in open meeting, but merely agreed to pay the premium fixed by the by-laws of the association, such premium cannot be enforced in a proceeding to foreclose.

4. USURY—*when grantee in conveyance may avail of defense of.* Where the grantee in a conveyance of land assumes and agrees to pay a mortgage thereon, he has the right to show as a defense to such mortgage that the same is usurious, where the mortgagee is a corporation pretending to be, but not in fact, a homestead loan association.

Foreclosure proceeding. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed December 16, 1904.

Statement by the Court. This is an appeal from a decree of the Circuit Court dismissing a bill in which the International Building Loan & Investment Union, a corporation, sought to foreclose certain trust deeds executed to secure indebtedness to said union. The original trust deeds were executed by Charles A. Linke and wife, who subsequently conveyed the premises therein described to one Janeka Wetterhahn, by whom they were conveyed to her son and by him thereafter to appellee, subject to the said encumbrances. The original bill was filed June 19, 1896. Subsequently, about April 27, 1900, Ira M. Cobe by leave of court filed an amended bill of complaint in which he states that in a suit wherein the People of the State of Illinois ex rel. James S. McCullough, Auditor of Public Accounts, were complainants and the International Building Loan and Investment Union was defendant, a decree was entered declaring said union to be insolvent, dissolving said corporation and appointing permanent receivers. It is further shown that said receivers subsequently sold all the assets and property of said union to said Cobe and that such sale was confirmed by the court the 23rd of February, 1900, by reason of which proceedings it is alleged the appellees became indebted to said Cobe for the amount claimed to have been due the union, being, it is claimed, $6,605.56.

By a subsequent petition the Assets Realization Company, a New Jersey corporation, it is said, authorized to do

business in Illinois, shows that said Ira M. Cobe sold and transferred to it the notes and mortgages in controversy, and that it is now the legal holder thereof; and by leave of court it files a supplemental bill praying for a decree of sale and foreclosure.

The applications for the loans in controversy were made on a form in part as follows: " I do hereby make application for a loan of $5,000 for six years, to bear interest at the rate of five per cent per annum, payable on or before the last Saturday of each month; all payments to be paid at such place as the lender may direct; and to secure the same agree to give a mortgage on the real estate set forth in the following."

The note given for said loan is as follows:

" CHICAGO, ILLINOIS,
December 2nd, 1889.

Six years after date, for value received, we promise to pay to the order of the International Building Loan and Investment Union, a corporation duly organized under the laws of the State of Illinois, the sum of five thousand dollars with five per cent interest per annum and also five per cent premium (bid thereon to secure this loan under the by-laws of said company) each payable monthly, on or before the last Saturday of each month. Principal, interest and premium payable at the office of International Building Loan and Investment Union at Chicago, Illinois. Any failure to pay interest or premium when due may make principal, interest and premium at once due, and any waiver of such right shall not prevent the payee from enforcing this right upon any recurrence of the default.
$5,000.00.

(Signed)     CHARLES A. LINKE,
EMILIE LINKE."

On the face of the note is an endorsement signed by the receivers of the union, which is as follows:

" The maker of this note is entitled to a credit hereon of $703\frac{13}{100}$ dollars, being in full and complete satisfaction and discharge of the entire distributive interest and share of the said maker as a stockholder in the International Building, Loan & Investment Union."

This amount so endorsed was realized from the sale by

the receivers of the assets of the union to appellant's assignor, including the notes now in controversy, by virtue of an order of the Superior Court made in the suit wherein the corporation was dissolved, that court directing the receivers to endorse on the note of each borrowing stockholder of the union a credit of twenty-five per cent of the amount paid by such shareholder as installments on his shares of stock, "in full and complete satisfaction of the entire distributive interest of said borrowing stockholder in and to the property and assets of said union."

There was a subsequent note for $1,000 made and secured under similar terms and conditions, which is also involved in these foreclosure proceedings.

The statute provides, (chapter 32, Homestead Loan Association Act, sec. 2,) that as soon as a hundred shares or more of capital stock in a mutual building loan and homestead association shall be subscribed the commissioners shall convene a meeting of the subscribers for the purpose among other things of adopting a charter and by-laws. In the present case the charter and by-laws provide as follows in section 2: "Its object is to afford its members a safe and profitable investment for their savings, to facilitate the purchase and improvement of real estate and provide the advantages usually expected from savings banks and other institutions of like character." Section 3 of art. XIII provides in part that "on all loans made by this union to a shareholder said shareholder shall pay an interest of five per cent per annum and a premium of five per cent per year on said loans." Section 1 of art. XII provides that "the terms and conditions expressed in the certificate of stock in connection with the application for membership and the by-laws of this association, form the contract between this union and each shareholder therein." Section 14 of art. XIII provides that "All shareholders shall pay or cause to be paid a monthly installment of seventy-five cents on each share named in his certificate until the same shall be fully paid," which is to form part of the loan fund. In section 20 it is provided that "the union reserves the right to mature any

certificate at any time after one year and to issue a paid-up certificate of shares payable at maturity of stock with interest at six per cent per annum or at the maturity of stock in pledge, payable at time of maturity of loan.

In the certificate of stock issued to its shareholders at the time the loans in controversy were made the union agreed to pay said shareholder, his heirs or assigns, "the sum of one hundred dollars for each of said shares at the end of six years" upon conditions as stated in the by-laws, that is, the payment of seventy-five cents per month on each share during the continuance of the contract, that is during the six years. Each certificate had printed on its back the charter and by-laws as part of the contract.

In December, 1895, the union received a communication from the State Auditor of Public Accounts, stating that an examination of its affairs disclosed that its methods of maturing stock were contrary to law, in that no building association had "a right legally, to undertake to mature stock at a specified time, and that in doing so, the authority granted such institutions by law is exceeded." The union was therefore requested to mature stock "only when the amount of payments made thereon, together with the profits apportioned thereto, equal the sum of one hundred dollars per share;" and was notified that failure to observe this request would result in legal steps "likely to be disastrous to the association." This action was taken under section 17 of the Act of 1893, and the association issued notice to its shareholders that it would obey the auditor's instructions.

The master to whom this cause was referred to take the evidence and report his conclusions, found appellant indebted on the original notes, $7,885.09. He found, however, that the officers of the union were at the time of the transfer of the mortgaged property to appellee, conducting its business illegally in maturing stock arbitrarily within six years, and that the provisions of the notes in suit, that the principal amounts therein named should be paid in six years, were void; also that the provisions in the charter and by-laws, that a borrowing stockholder should pay interest

at the rate of five per cent per annum, and a premium at five per cent per annum, were at that time (prior to the amendment in force June 16, 1891, to sec. 8, chap. 32, R. S.) void.

The master also finds that there was no competitive bidding for a preference for said loans when made, and that therefore the contract as to payment of premium was usurious. He concludes, however, that this defense cannot be made by any one but the original maker of the notes, his immediate grantee having assumed and agreed to pay the notes as a part of the purchase price, and appellee having deducted from the purchase price of the premises all of the payments which he has made on said loans.

In a supplemental report the master further found from evidence " that said union received deposits of money from its stockholders, and paid interest on same at the rate of six per cent per annum, if left on deposit for a period of six months, and that it had a large number of agents soliciting such deposits, and paid them commissions of about two per cent for obtaining the same, and that said union sold what purported to be paid-up stock at $55 per share, upon which it agreed to pay its holder $100 at the expiration of six years from the date of its issue and paid its agent a commission of seventy-five cents per share for selling said paid-up stock, and that none of said acts were authorized by its charter and by-laws, or by the laws of the State of Illinois."

Objections were filed to the master's report, which having been ordered to stand as exceptions, were sustained by the Circuit Court, which found that the two notes and trust deeds or mortgages in controversy and all accrued indebtedness thereon have been fully paid, satisfied and discharged and are no longer liens upon the premises in said trust deeds described. The bill of complaint with amended and supplemental bills were therefore dismissed.

It is from this decree the appeal before us is prosecuted.

S. W. SWABEY, for appellant.

J. Henry Kraft and Emil A. Meyer, for appellees.

Mr. Justice Freeman delivered the opinion of the court.

There is and can be no serious doubt that the certificate constituting the original borrower in this case a shareholder of the International Building, Loan and Investment Union, so far as it embodies an agreement of the union to pay the holder of the certificate the full value of one hundred dollars for each of his shares of stock at the end of six years from the date of the certificate, whether such stock has matured or not, is "inconsistent with the statute under which the corporation has its existence, and antagonistic to the legal purposes and plans of such organization, and not enforcible" as a contract. King v. International B., L. & I. Union, 170 Ill. 135. The provisions of the act under which appellant was organized as a building association do not authorize any such agreements. Rev. Stat., chap. 32, title, "Homestead Loan Associations." In the case cited it is said that by-laws purporting to authorize such an agreement are ineffectual to make the agreement valid, "for the reason a corporation has no power to enact a by-law inconsistent with the statute under which it was created." By its terms the certificate was payable in six years, and if valid, the amount due under it at the end of the term would be applicable upon the debt of the holder to the union. It is contended by appellant, however, that the certificate, while by its terms payable in six years, is, nevertheless, to be deemed to have been issued in view of the statutory provision authorizing the issue of shares of stock in periodical series, each class having a different fixed periodical payment of dues, the payment of which "shall continue on each share until the same shall have reached maturity value, or is withdrawn or retired." R. S., chap. 32, sec. 83. It is argued that notwithstanding the invalidity of the provisions of the certificate as therein expressed, the statute entered into and became a part of the certificate as fully as if in terms a part thereof, making the contract lawful and operative. There is language which may bear

such construction in the case above referred to. King v. International Union, *supra*, p. 142. The loans in the case at bar, however, were made in December, 1889, and February, 1890. At that time the provision of the statute relied upon was not in existence. The act containing that provision was approved June 16, 1897, in force July 1, 1897. R. S. of 1897, chap. 32, sec. 83. Whatever may have been the date of the certificate which was under consideration in the case above cited, the language of the court in that case is not applicable, as we understand the law, to the certificate in the case before us. A provision of a statute enacted in 1897, can scarcely be deemed to have entered into and become a part of a certificate issued eight years before, which had matured according to its terms two years before the enactment relied upon, and where, as here, the bill of complaint which began the proceedings before us for review was filed June 19, 1896, before the remedial statute of 1897 became operative. The certificate was therefore illegal as a building association contract when issued, and remained so during the whole time of the transactions involved in the case before us. It appears, however, that the borrower and his assigns complied substantially with the provisions of the certificate and of the by-laws in that respect and paid to the union the amounts therein required of them. It was therefore apparently an executed agreement according to its terms when this suit was begun.

It was further provided in the charter and by-laws adopted by the union that each shareholder should pay on all loans not only interest at five per cent per annum but premium also at five per cent per annum, and the terms and conditions of the certificate, the application for membership and the by-laws are made to form the contract between the union and each shareholder. The notes given to secure the loans likewise provided for the payment of five per cent interest per annum and five per cent premium, a total of ten per cent upon the amount of each note. The whole contract, therefore, between the union and the borrower, was in all its parts in violation of the statute

under which building associations were organized in this state. There was no authority conferred by the statute to demand payment of a fixed premium at that time. The statute then in force required the money in the treasury, if one hundred dollars or more, to be offered for loan in open meeting and to be loaned to the stockholder who should bid 'the highest premium for the preference. It was not until 1891, long after these loans were made, that the law authorized a premium to be fixed in the by-laws. The premium was therefore " illegally fixed, and the contract was usurious." Eklund v. Borrowers & Investors B. Assn., 91 Ill. App. 657–661; same case 190 Ill. 257–266; Jamieson v. Jurgens, 195 Ill. 86–88.

The scope of the union was not such as is authorized by the building association statutes of this state. Its funds were derived from sources not recognized by the building association laws. Rhodes v. Missouri Savings Co., 173 Ill. 621–631. It appears from the evidence that it issued paid-up stock as well as what is called " current " stock. One of the " terms and conditions " upon which the certificates of stock were issued and accepted was that " the union further agrees to issue a paid-up certificate for the amount of all monthly installments paid on shares that have been in force one year or over, payable at the maturity of the stock with interest at six per cent per annum." There is evidence also that it received money on deposit; and this seems to have been in accordance with section 2 of its charter, and to have been one of the purposes of its organization. It had no power to conduct a banking business. As said in Rhodes v. Missouri Savings Co., *supra :* " Neither directly nor by implication is the issuing of paid-up stock recognized by our statute. Such a procedure    *    *    * is a distinct departure from the original plan of an association recognized by our statute as a co-operative building association." The court concluded in that case (p. 632) that an association which under the guise of a building association conducts a business of such a character as to make it in fact a loaning company only, " will be treated as a

loaning company and will not, in the absence of other and additional legislation, receive the benefit of the liberal statute and decisions of this state which have attempted to foster these purely co-operative associations for building and saving purposes." Appellees would be obliged, therefore, unless in some way estopped, to return only the amount of money actually loaned in this case. It appears from the evidence that the union has been paid this amount with interest, and it is claimed that the debt is discharged. Borrowers Assn. v. Eklund, 190 Ill. 257–267; Jamieson v. Jurgens, *supra*.

It is contended, however, that as grantees of the premises covered by the trust deeds in controversy, appellees are estopped from setting up usury. In the deed from Linke, the original borrower, to Mrs. Wetterhahn, it is recited that the grantee assumes and agrees to pay the two mortgages according to the terms and conditions thereof, with all accrued indebtedness thereon. Her grantee, Samuel Wetterhahn, assumed nothing, but appellee Heiden, who bought the property from him, took it subject to the mortgages. In Crawford v. Nimmons, 180 Ill. 143–147, it is said that "in all the cases where it has been held that the grantee cannot question the validity of the mortgage, he has purchased the property on the basis of a clear title at an agreed price, and has assumed to pay the mortgage debt as a part of the consideration, or the amount of such debt has been deducted from the purchase price of the land on the basis of such clear and complete title. In such cases the grantee has paid that part of the purchase price representing the estimated value of the equity of redemption, and has reserved the amount of the encumbrance," etc. It is further said that "if the usury has become a part of the consideration in the agreement between the mortgagor and his grantee, it is an affirmance of the debt by the mortgagor, and when the grantee contracts with a view to the payment of the encumbrance, equity demands that he shall pay it or lose the property. There was no evidence of such a condition here." What is said in that

case is, we think, applicable to the grantee, who took the title merely subject to the mortgages. We are of opinion, however, that, waiving the usurious nature of the contract, the union in this case must be treated, not as a building association, but as a mere loaning company, "not entitled to claim any special rights or powers" granted by the statute to building associations, and that the limit of recovery should be the amount of money actually loaned, with legal interest thereon. Rhodes v. Missouri Savings Co. *supra*, p. 633. This amount has been paid.

We are of opinion, therefore, that the decree of the Circuit Court is correct and it will be affirmed.

*Affirmed.*